[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10289
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-00094-TCB


JOHN W. MROSEK,
LEE M. MROSEK,

                                                    Plaintiffs-Appellants,

versus

CITY OF PEACHTREE CITY,
MAYOR DON HADDIX,
GEORGE DIENHART,
Individually and as Member of the Peachtree City Council,
ERIC IMKER,
Individually and as Member of the Peachtree City Council,
KIM LEARNARD,
Individually and Member of the Peachtree City Council,
VANESSA FLEISCH,
Individually and as Member of the Peachtree City Council,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 13, 2015)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

John and Lee Mrosek (the Mroseks) appeal the district court's grant of summary judgment to the city of Peachtree City, four members of the Peachtree City Council, and Mayor Don Haddix (collectively, the City), in the Mroseks' lawsuit alleging that the City violated the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1365(a), as well as several Georgia laws, by failing to do maintenance and repairs on a stream, pond, and dam (Stream, Pond, and Dam, respectively) located partially on the Mroseks' property. After thorough consideration of the briefs and review of the record, we affirm.

I.

"We review the district court's grant of summary judgment de novo, viewing the materials presented and drawing all factual inferences in a light most favorable to the non-moving party." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005). Summary judgment is properly granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(a). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

## II.

The Clean Water Act "allows states to implement their own permit programs . . . and Georgia has done so." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1005 (11th Cir. 2004). Georgia obtained a permit under the National Pollutant Discharge Elimination System (NPDES) permit program, which "impose[s] limitations on the discharge of pollutants, and establish[es] related monitoring and reporting requirements." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174, 120 S. Ct. 693, 701 (2000); *accord Driscoll v. Adams*, 181 F.3d 1285, 1288 (11th Cir. 1999). Peachtree City, as a small municipal separate storm sewer system operator (MS4) under NPDES permit regulations, filed the requisite Notice of Intent with the Georgia Environmental Protection Division in order to discharge stormwater into navigable waters under the general NPDES permit. 64 Fed. Reg. 235 p. 68722. As a result, Peachtree City is subject to the Clean Water Act and NPDES permit requirements of stormwater management. *See Driscoll*, 181 F.3d at 1288.

In 2001, the Atlanta Regional Commission published a three-volume guidebook called the Georgia Stormwater Management Manual (Blue Book) in order to provide guidance on stormwater runoff.  While the Blue Book has no independent regulatory authority, the City's local ordinance, which brings the municipality into compliance with the NPDES permit, incorporates the standards set forth in the Blue Book.  *See* Peachtree City, Ga., Code of Ordinances (hereinafter Ordinance) pt. II, app. B, art. X, § 1011(a)(6).

Of relevance to the instant appeal, the Ordinance is applicable to any "new development" or "redevelopment."  The Ordinance defines "new development" as "a land development activity on a previously undeveloped site."  *Id.* § 1011(a)(7). "Redevelopment" is "a land development project on a previously developed site, . . . exclud[ing] . . . exterior changes or improvements which do not materially increase or concentrate stormwater runoff, or cause additional nonpoint source pollution."[1]  *Id.*  The Ordinance does not apply to "[r]epairs to any stormwater management facility or practice deemed necessary by the city engineer."  *Id.* § 1011(a)(2)(b)(iv).

### III.

---

[1] As relevant here, one of the following criteria must also be met: "(i) New development that involves the creation of 5,000 square feet or more of impervious cover, or that involves other land development activities of one acre or more; [or] (ii) [r]edevelopment that includes the creation, addition or replacement of 5,000 square feet or more of impervious cover, or that involves other land development activity of one acre or more . . . . "  *Id.* § 1011(a)(2)(a).

4

It is undisputed that the Stream, Pond, and Dam were constructed prior to publication of both the Blue Book in 2001 and enactment of the Ordinance in 2007.  *See id.* § 1011.  Thus, they do not constitute new development or redevelopment.  *See id.* §§ 1011(a)(2)(a), (a)(7).  And the Mroseks point to no authority stating that the Ordinance or the Blue Book standards are retroactively applicable to stormwater facilities already in existence when the Ordinance was enacted or the Blue Book was published.  Accordingly, the City would only have to bring the Stream, Pond, and Dam into compliance with the Ordinance and the Blue Book standards if some new development or redevelopment affected stormwater runoff to the Stream, the Pond, or the Dam.  *See id.* § 1011(a)(2)(a).

In 2011, a neighboring church (Church) located near the Stream, Pond, and Dam expanded the parking lot on its property and built a detention pond designed to mitigate stormwater runoff issues.  The Mroseks argue that this expanded parking lot, which added over 100,000 square feet of impervious surface, should be considered new development or redevelopment that causes stormwater to run off into the Stream, Pond, and Dam, bringing them within the purview of the Ordinance.  However, the Mroseks did not establish that this redevelopment triggered the City's obligation under the Ordinance to retrofit the Stream, Pond, and Dam because they did not present sufficient evidence showing that stormwater from the expanded parking lot ran into those areas.  A redevelopment must

5

"materially increase" stormwater runoff in order to fall within the definition of "redevelopment" under the Ordinance. *Id.* § 1011(a)(7). The City presented evidence that the Church built its own detention pond, which accounted for any additional runoff created by the parking lot. Moreover, a 2011 Integrated Science & Engineering, Inc. study (ISE Study), completed before construction of the expanded parking lot began, concluded that if the Church built an onsite detention pond, stormwater runoff to the Pond would not increase. In contrast, the Mroseks presented only an affidavit from an engineer, citing to the ISE Study and stating that the Church improvements had "some impact" on the Pond. They did not provide any qualitative data in support of that statement. This is insufficient to show that the Church's expansion affected the Stream, Pond, and Dam such that retrofitting was required under the Ordinance and Blue Book standards. *See Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512.

Further, even if the Church's expansion caused an increase in stormwater runoff, such that retrofitting was required, § 1011(a)(2)(b)(iv) permitted the City to defer maintenance because the City engineer deemed deferral necessary. *See* Ordinance pt. II, app. B, art. X, § 1011(a)(2)(b)(iv). The evidence showed that the City had solicited regular studies and assessments of the Pond and Dam, and based upon those reports (which concluded the Dam was not in imminent danger of failure) and the City's lack of funding, the City engineer determined that repairs

would be completed in the future.  The Mroseks presented no evidence to show that the City failed to assess the Stream, Pond, or Dam, or that the reports were wrong.  They therefore failed to establish that the City engineer's determination to defer maintenance was outside the discretion granted by the Ordinance.  *See Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) ("A [nonmoving party] may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

The Mroseks argue that the deference accorded to the City engineer exceeds the discretion permitted to MS4s under the NPDES regulations.  However, the Environmental Protection Agency explains that "MS4s need the flexibility to optimize reductions in storm water pollutants on a location-by-location basis" and that the City may consider various factors in its evaluative process, including "implementation schedules, current ability to finance the program, . . . and capacity to perform operation and maintenance."  64 Fed. Reg. 235, p. 68754.  Therefore, the City's decision to defer maintenance was not a violation of its NPDES permit or the Clean Water Act.[2]

---

[2] The Mroseks also argue that the deference accorded to the City engineer under the Ordinance violates the terms of the Blue Book incorporated in the Ordinance.  However, the Ordinance specifically contemplates the inclusion of additional local rules.  *See* Ordinance pt. II, app. B, art. X, § 1011(a)(6) ("The city will utilize the policy, criteria and information including technical specifications and standards in the latest edition of the [Blue Book] *and any relevant local*

7

IV.

The district court did not err in granting summary judgment to the City. There was no genuine dispute of material fact with respect to the City's responsibility to undertake maintenance and repairs of the Stream, Pond, and Dam, and the Mroseks failed to establish that the City's failure to do so immediately was a violation of the Ordinance, the standards set forth in the Blue Book, or the Clean Water Act. They did not present sufficient evidence that the new development or redevelopment by the neighboring Church affected stormwater runoff to the Stream, Pond, or Dam, such that the City was required to bring them into compliance with its Ordinance and the Blue Book standards.[3] Accordingly, we affirm.

**AFFIRMED.**

---

*addenda*, for the proper implementation of the requirements of this [O]rdinance." (emphasis added)).

[3] We decline to consider the Mroseks' argument that the Ordinance is preempted by the Clean Water Act because the Mroseks raised it for the first time on appeal. "This court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotation marks omitted).